EXTRUSIONS DIVISION, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Extrusions Div. v. Commissioner
Docket No. 23062-92
United States Tax Court
T.C. Memo 1994-610; 1994 Tax Ct. Memo LEXIS 619; 68 T.C.M. (CCH) 1423; December 14, 1994, Filed *619 Decision will be entered for respondent. For petitioner: Frank G. Pollock and Douglas J. Van Der Aa. For respondent: James F. Mauro. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
Taxable Section
Section
Section
Section
Year Ended
Deficiency
6653(a)(1) [1]
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
March 31, 1988
$ 40,828
$  --  $ 2,041
$ * $  9,002
March 31, 1989
69,477
3,474
--  --
13,241
* 50 percent of the interest due on the portion of the underpayment
attributable to negligence. Respondent determined that the entire
underpayment was attributable to negligence.
The issues remaining for decision are: (1) Is petitioner entitled to a depreciation deduction *620 for each of its taxable years ended March 31, 1988, and March 31, 1989, for certain antique automobiles? We hold that it is not. (2) Is petitioner liable for the additions to tax under section 6653(a)(1)(A) and (B) for its taxable year ended March 31, 1988, and the addition to tax under section 6653(a)(1) for its taxable year ended March 31, 1989? We hold that it is. (3) Is petitioner liable for the addition to tax under section 6661(a) for each of its taxable years ended March 31, 1988, and March 31, 1989? We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner is a Michigan corporation that had its principal office and mailing address in Grand Rapids, Michigan, at the time the petition was filed. James D. Azzar (James Azzar) has been the sole shareholder of petitioner since its formation during 1975. He also serves as its president and sole officer. During the taxable years at issue, petitioner's primary business activity was acting as a sales representative for Azzar Store Equipment Corporation (ASE), which had taken over from petitioner the manufacture of plastic parts. During those years, ASE paid petitioner commissions *621 for the sale of those parts. Sam Azzar, James Azzar's father, is the sole shareholder of ASE. James Azzar serves as its secretary-treasurer. For each of the years at issue, petitioner claimed a depreciation deduction for 11 antique automobiles. Those automobiles, together with 69 other antique cars, were stored in a heated building owned by petitioner. Of the 11 automobiles at issue, none was ever titled under the name of petitioner. During at least a portion of the years at issue, at least five of the 11 automobiles at issue, viz., a 1931 Auburn, a 1929 Auburn, a 1929 Rolls Royce, a 1929 LaSalle, and a 1930 Buick Roadster, were titled and licensed in Minnesota under the name of Dealer Motor Vehicles Corporation (DMV), a wholly owned subsidiary of petitioner that was organized under the laws of Minnesota. Minnesota provided special benefits to owners of antique automobiles, including a perpetual license plate. At least one of the 11 automobiles at issue, viz., a 1932 Packard, was purchased by James Azzar during 1986. During 1986 and 1987, at least three of the 11 automobiles at issue, viz., a 1929 Packard, a 1929 LaSalle, and a 1930 Buick Roadster, were purchased by E.M.A. *622 Corporation (EMA). [2] EMA, a licensed automobile dealer, is owned 40 percent by James Azzar, 39 percent by James Azzar's brother, and 21 percent by Sam Azzar. On or about January 17, 1994, EMA, through its secretary-treasurer James Azzar, assigned all of its right, title, and interest in those three automobiles to petitioner. [3]
The remaining four automobiles at issue, viz., a 1926 Stutz, a 1928 Ford Roadster, a 1912 Franklin, and a 1906 Autocar, were purchased during 1986 by an unidentified purchaser from Harrah's Club. When the 11 automobiles at issue were driven on the Michigan roads, they were driven under the authority of "dealer tags" supplied to EMA *623 by the State of Michigan and were insured under a policy maintained by EMA. OPINION Petitioner bears the burden of proving that respondent's determinations in the notice of deficiency (notice) are erroneous. Rule 142(a); . It has attempted to satisfy its burden through testimonial and documentary evidence. Petitioner's only witness on its behalf was James Azzar, its sole shareholder and president. Much of his testimony is uncorroborated and served the interests of his wholly owned corporation, petitioner herein. We found much of James Azzar's testimony to be questionable. Under the circumstances, we are not required to, and we do not, rely on that testimony to support petitioner's positions in this case. See , affg. in part and remanding in part ; , affg. per curiam ; ; *624 , affd. per curiam . Evidentiary Issues
Before turning to the principal issues presented, we shall address petitioner's contentions regarding the Court's rulings at trial on certain evidentiary matters. [4]
Respondent's Objection to the Introduction of Certain Documents by Petitioner
Petitioner argues that the Court improperly sustained respondent's objection to the introduction of certain documents that were not provided to respondent at least 15 days prior to the first day *625 of the trial session. The Court's standing pretrial order provides in relevant part: Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.
The trial session in the instant case was set to begin on January 31, 1994. The documents in question were not shown to respondent until late in the morning on that date. At trial, respondent objected to the introduction of those documents by petitioner on the ground that she would be prejudiced because she did not have sufficient time to verify their authenticity or otherwise to investigate their source and the facts surrounding them. In response to respondent's evidentiary objection to the documents in question, petitioner claimed that its delay in providing those documents to respondent was for good cause. In support of that position, petitioner *626 contended at trial that James Azzar had not located those documents until the weekend prior to the date of trial. Petitioner also asserted that James Azzar's delay in locating the documents was due to the fact that petitioner was not aware until sometime during January 1994, less than 30 days before the date set for trial, that respondent was challenging whether it in fact owned the 11 automobiles at issue during the period for which it claimed the depreciation deductions at issue. At trial, the Court sustained respondent's evidentiary objection. We found that petitioner's purported excuse for not providing the documents in question to respondent until January 31, 1994, did not represent good cause for its failure to comply with the Court's standing pretrial order and that respondent would have been prejudiced by introduction of the documents in question. The Court hereby affirms that ruling. [5]
*627 Respondent stated in the notice for the years at issue that petitioner had not established that it had a "capital interest" in the 11 automobiles at issue. In the context of a determination disallowing petitioner's claimed depreciation deductions, we think it clear that a capital interest in the automobiles at issue, as used in the notice, means a capital investment in those cars, which, as discussed below, is one of the prerequisites for a taxpayer's entitlement to a depreciation deduction. Thus, petitioner should have been aware when it received the notice that respondent was challenging petitioner's ownership of, or other capital investment in, those automobiles. It is also noteworthy that respondent represented at trial, and petitioner did not dispute, that during both the audit process and again after the petition in this case was filed she made general requests to petitioner for all documents that would support its depreciation of the 11 automobiles at issue. Respondent also specifically requested documentation of ownership at a conference between the parties on or about December 8, 1993, and again in a follow-up telephone conversation during early January 1994. The foregoing *628 circumstances led the Court to find that petitioner had no good cause for failing to provide respondent with the documents in question, as required by the Court's standing pretrial order. The Court also found that respondent would have been prejudiced by introduction of those documents because she did not have sufficient time to verify their authenticity or otherwise to investigate their source and the facts surrounding them. Respondent's Objection to Question on Redirect Examination of Petitioner's Witness
Petitioner contends that it was prejudiced by the Court's sustaining an objection made by respondent during petitioner's redirect examination of James Azzar. On redirect examination, petitioner's counsel asked James Azzar when petitioner had placed the 11 automobiles at issue into a rental pool. Respondent's counsel objected to that question on the grounds that it had already been asked and answered. During the discussion regarding that objection, there was some confusion as to whether and when that question had been asked and how it had been answered. Petitioner's counsel indicated that it had been asked during direct examination of James Azzar and that it had been *629 answered by him. The Court then stated: "The record will speak as the record is stated." Our review of the record discloses that petitioner's counsel did ask Mr. Azzar on direct examination when petitioner had placed the 11 automobiles at issue into a rental pool. Mr. Azzar's response was that he placed them into a rental pool during 1987 or 1988. Thus, petitioner was not prejudiced by the Court's not having allowed James Azzar to respond again on redirect examination to the same question that he had been asked on direct examination. [6]
Claimed Depreciation Deductions
Respondent determined *630 that petitioner is not entitled for the years at issue to deductions for depreciation with respect to the 11 automobiles in question because it did not establish that (1) it had a capital interest in those automobiles; (2) they were used in a trade or business; (3) they had a determinable useful life; and (4) their value decreased as a result of wear and tear. Section 167(a) allows "as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business, or (2) of property held for the production of income." In the case of tangible property, the amount of the allowance is generally determined under section 168. Sec. 168(a). The taxpayer entitled to the deduction for depreciation is the taxpayer who made a capital investment in property that is subject to exhaustion, wear, and tear. See ; ; ; . *631 Although ownership is often required to claim the depreciation deduction, that deduction will not be denied where it is shown that a taxpayer, such as a lessee, did in fact make a capital investment in the property in question. See ; see also . The burden is on the taxpayer to prove that he or she made a capital investment in the property so as to be entitled to a depreciation deduction for that property. ; . On the present record, we find that petitioner failed to prove that it was the owner of, or otherwise made a capital investment in, any of the antique automobiles at issue during its taxable years ended March 31, 1988, and March 31, 1989. The holder of legal title to an asset is not necessarily the person who owns, or who otherwise has a capital investment in, that asset for purposes of determining who is entitled to a depreciation deduction in respect of it. *632 See . Nonetheless, it is noteworthy that, on the instant record, we find that petitioner did not prove that it held legal title to any of the antique automobiles at issue. During those years, none of the 11 automobiles at issue was titled in the name of petitioner.[7] The titles for five of those automobiles were in the name of DMV. In other instances, each of the title documents was signed by the sellers, but the name of the new owner or transferee was left blank. Petitioner claims through the testimony of James Azzar that its purpose for titling and licensing at least some of the automobiles at issue in the name of DMV, *633 its wholly owned subsidiary that was incorporated in Minnesota, was to take advantage of special incentives that Minnesota offered to owners of antique automobiles, including a perpetual license plate. We do not accept that testimony as establishing that petitioner, and not DMV, held a capital investment in the automobiles titled in DMV's name. [8]
Although it is not altogether clear, petitioner apparently argues that, even though title to the automobiles at issue may not have been in its name during the years *634 at issue, it nonetheless was the owner of them because it provided the money to purchase, and therefore made a capital investment in, those automobiles. We disagree. Based on our review of the entire record, we are not persuaded that petitioner provided the funds to purchase, or that it purchased, on its own behalf any of the 11 automobiles at issue. EMA purchased at least three of those automobiles, and James Azzar purchased at least one. The record does not disclose who purchased the remaining automobiles. Petitioner contends that it supplied the money to both James Azzar and EMA so that they could purchase on behalf of petitioner at least some of the automobiles at issue. Petitioner asserts that it provided the funds for those purchases whenever it was necessary to have either an individual (i.e., James Azzar) or a dealer (i.e., EMA) act as the purchaser. The only evidence in the record that suggests that petitioner provided the funds to purchase any of the 11 automobiles at issue is the testimony of James Azzar, petitioner's president and sole shareholder. As stated above, we are unwilling to rely on his uncorroborated testimony that served the interests of his wholly *635 owned corporation, petitioner herein, in order to establish that petitioner provided the funds for the purchase of those automobiles. Even assuming arguendo that petitioner did supply the funds to James Azzar and to EMA in order to enable them to purchase certain of the automobiles at issue, that fact, standing alone, would not prove that petitioner made a capital investment in those automobiles, especially where, as here, none of those automobiles was titled in petitioner's name, and there is no other reliable evidence in the record of petitioner's ownership of or other capital investment in them. James Azzar is petitioner's sole shareholder and president. He also is the largest stockholder of EMA, and the balance of the EMA stock is owned by members of his family. Transactions involving a corporation and its (1) sole shareholder or (2) any other related person such as EMA must be closely scrutinized in order to determine their true substance. See , affg. ; ; *636 , affd. without published opinion . If petitioner had supplied the money to or on behalf of James Azzar so as to enable him to purchase certain of the automobiles in question, such funds could have been characterized as a dividend, compensation, or a loan to him. If petitioner had supplied the money to or on behalf of EMA so as to enable it to purchase certain of the automobiles in question, such funds could have been characterized as a dividend, compensation, or a loan from petitioner to James Azzar followed by a contribution of those funds by him to EMA's capital. Alternatively, such funds could simply have been a loan from petitioner to EMA. In any of those events, James Azzar or EMA, as the case may be, and not petitioner, would have been the owner of, and the person with a capital investment in, those automobiles even assuming arguendo that the funds to purchase them had been supplied by petitioner. On the present record, we find that petitioner failed to prove that it purchased on its own behalf, or that it provided the funds *637 to James Azzar and/or to EMA so that they could purchase on behalf of petitioner, the automobiles in question. Consequently, we find that petitioner failed to prove that it had an ownership interest or other capital investment in the automobiles at issue. To further support its claim to the depreciation deductions in question, petitioner asserts that it collected rental income generated by certain of the automobiles at issue and reported that income in its tax returns for each of the years at issue. As evidence of that rental income, petitioner presented a series of invoices that purport to be bills to ASE for rent with respect to those automobiles and checks from ASE in the same amounts as those invoices. The total amounts claimed by petitioner as rental income are $ 45,000 for its taxable year ended March 31, 1988, and $ 55,000 for its taxable year ended March 31, 1989. Petitioner presented no contracts establishing that a rental relationship existed between ASE and itself. Nor did petitioner keep contemporaneous records of the alleged rental use of any of the 11 automobiles at issue. The only person to which petitioner claims it rented the automobiles in question during *638 the years at issue is ASE, which is wholly owned by Sam Azzar, James Azzar's father, and for which James Azzar serves as secretary-treasurer. Thus, given the relationships among petitioner, ASE, and their stockholders, the alleged rental activity between petitioner and ASE involving the automobiles at issue is suspect. ASE pays commissions to petitioner for selling its plastic products. Consequently, except for their interest in attempting to bolster petitioner's claim to depreciation deductions for the 11 automobiles at issue, it would be immaterial to both petitioner and ASE whether the payments that petitioner claims were rent for those automobiles were rent or commissions. This is because, whether those payments were rent or commissions, petitioner would have had income in the amounts of the payments and ASE could have claimed deductions for them. In fact, petitioner's journal for the year ended March 31, 1989, contains an entry that shows that the payments that it claimed as rental income in its return for the taxable year ended on that date were initially recorded in that journal as commissions received from ASE. On the instant record, we find that petitioner failed to *639 prove that during the taxable years at issue it received rental income from ASE for the automobiles at issue. Based on our review of the entire record in this case, we find that petitioner did not satisfy its burden of proving that it was the owner of, or otherwise made a capital investment in, the automobiles at issue. [9] *640 We therefore sustain respondent's determination that petitioner is not entitled to a depreciation deduction for those automobiles for either of those years. [10]
Additions to Tax
Negligence
Respondent determined that petitioner's underpayment for each of its taxable years ended March 31, 1988 and March 31, 1989, was due to negligence or intentional disregard of rules or regulations. For the taxable year ended March 31, 1988, section 6653(a)(1)(A) and, for the taxable year ended March 31, 1989, section 6653(a)(1) provide that if any part of the underpayment of tax required to be shown in a return is due to negligence or disregard of rules or regulations, an amount equal to five percent of the entire underpayment is to be added to the tax due for that year. For the taxable year ended March 31, 1988, section 6653(a)(1)(B) further provides that an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence is to be added to the tax. "Negligence" includes a lack of due care or a failure to do what a reasonable and ordinarily prudent person would *641 do under the circumstances. , affg. ; . In addition to disallowing the depreciation deductions for the taxable years at issue, respondent disallowed certain deductions for legal and professional fees. Petitioner conceded those deductions prior to the trial herein. Petitioner presented no evidence and makes no argument, and therefore failed to prove, that its underpayment for each year at issue that is attributable to the deductions for legal and professional fees was not due to negligence or disregard of rules or regulations. Consequently, since at least a portion of the underpayment for each year at issue was due to negligence or disregard of rules or regulations, we sustain respondent's determination that, pursuant to section 6653(a)(1)(A) for the taxable year ended March 31, 1988, and section 6653(a)(1) for the taxable year ended March 31, 1989, the entire underpayment for each such year is subject to the addition to tax imposed by those respective provisions. For *642 the taxable year ended March 31, 1988, section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest due on the portion of the underpayment that is attributable to negligence. As discussed above, petitioner failed to prove that the underpayment for that year that is attributable to its claiming deductions for legal and professional fees was not due to negligence or disregard of rules or regulations. Therefore, such underpayment is subject to the addition to tax imposed by section 6653(a)(1)(B). With respect to the portion of the underpayment for the taxable year ended March 31, 1988, that is attributable to petitioner's claiming a depreciation deduction for the automobiles at issue, petitioner asserts that such underpayment was not due to negligence or disregard of rules or regulations because it relied on its accountant to prepare its tax return for that year. Although reliance on the advice of a professional may under certain circumstances be grounds to overcome negligence, reliance on a professional is not an absolute defense. , affd. without published opinion ; *643 , affd. , affd. . In the case of claimed reliance on an accountant who prepared the taxpayer's return, the taxpayer must establish, inter alia, that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. ; . James Azzar testified that petitioner's accountant calculated the amount of the depreciation deductions reported by petitioner in its tax returns for both taxable years at issue. However, petitioner presented no evidence showing that it provided information to its accountant regarding petitioner's ownership of, or other capital investment in, the automobiles at issue. Nor did petitioner establish that its accountant, in preparing petitioner's returns for the years at issue, was responsible for determining that petitioner owned or otherwise *644 had a capital investment in those automobiles. [11]
On the instant record, we find that petitioner failed *645 to prove that the portion of its underpayment for its taxable year ended March 31, 1988, that is attributable to its claimed depreciation deduction was not due to negligence or disregard of rules or regulations. We therefore sustain respondent's determination that petitioner is liable for the addition to tax imposed by section 6653(a)(1)(B) on the entire underpayment for that year. Substantial Understatement of Income Tax
Respondent determined that there was a substantial understatement of income tax in petitioner's return for each of its taxable years ended March 31, 1988, and March 31, 1989. Section 6661(a) provides that if there is a substantial understatement of income tax for the taxable year, an amount equal to 20 percent of the amount of any underpayment attributable to such understatement is to be added to the tax. With respect to corporations, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown in the return or $ 10,000. Sec. 6661(b)(1). The amount of the understatement is reduced to the extent that the under-statement is due to the tax treatment of any item for which there is or was substantial authority or *646 for which the facts affecting the item's tax treatment were adequately disclosed in the return. [12] Sec. 6661(b)(2). As was true with respect to the additions to tax for negligence, petitioner presented no evidence and makes no argument that it had substantial authority for deducting in its return for each year at issue the professional and legal fees that it conceded before trial. Consequently, we find that petitioner failed to prove that it had substantial authority for claiming those deductions. Therefore, we sustain the imposition of the addition to tax under section 6661(a) for each year at issue on the portion of the understatement for each such year that is attributable to those deductions. With respect to the portion of the understatement for each year at issue *647 that is attributable to petitioner's claiming a depreciation deduction for the automobiles at issue, petitioner asserts that it relied on substantial authority in claiming that deduction for each of those years. In support of its position, petitioner points to the Accelerated Cost Recovery System provisions contained in section 168 and, in particular, to section 168(e)(3)(B)(i) which provides that the class life of all automobiles is five years. Petitioner does not point to any substantial authority on which it claims to have relied for its position that it owned, or otherwise had a capital investment in, the automobiles at issue. In light of our holdings that petitioner failed to establish that it owned or otherwise had a capital investment in those automobiles and that it therefore is not entitled to depreciation deductions for the years at issue, we did not address whether section 168 would have allowed petitioner such deductions in the event that it had established that it had the requisite capital investment in those automobiles. Even assuming arguendo that section 168 would have allowed petitioner the depreciation deductions at issue in the event that it had shown that it *648 had the requisite capital investment in them, based on our review of the entire record in this case, we find that petitioner failed to prove that it had substantial authority for either year at issue in claiming that it owned or otherwise had a capital investment in the automobiles at issue. We therefore sustain respondent's determination that petitioner is liable for the addition to tax under section 6661(a) for each of its taxable years ended March 31, 1988, and March 31, 1989. To reflect the foregoing and the concessions of the parties, Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. As found above, both the 1929 LaSalle and the 1930 Buick Roadster were titled and licensed during at least a portion of the years at issue under the name of DMV.↩
3. It is unclear from the record whether EMA assigned to petitioner its right, title, and interest in more than one 1930 Buick automobile. However, only one 1930 Buick automobile is at issue.↩
4. Petitioner also argues that the Court improperly allowed respondent to make factual allegations in its opening statement that are not supported by the record. Respondent's opening statement, as was petitioner's, was a statement of that party's position in this case. Any factual allegations advanced therein are not evidence, and the Court did not base its findings of fact on any such allegations.↩
5. We note that petitioner was not prejudiced by our ruling. The documents that petitioner sought to introduce appear to suggest that petitioner may have supplied the funds that allowed James Azzar to purchase certain automobiles from Harrah's Club. As discussed below, the fact that a closely held corporation provides money to its sole shareholder to purchase an asset does not prove that such corporation owns, or otherwise made a capital investment in, that asset. Assuming arguendo that the documents in question had properly been part of the record in this case, our holdings herein would have remained the same.↩
6. We note that the facts relating to when the 11 automobiles at issue were placed into a rental pool are relevant to the question of whether petitioner used the automobiles in a trade or business or held them for the production of income. Because we hold herein that petitioner failed to prove that it had an ownership interest or other capital investment in the 11 automobiles at issue, we need not address that question.↩
7. It also is noteworthy that petitioner did not license any of the automobiles at issue under its own name. When those automobiles were driven on the Michigan roads, they were driven under the authority of "dealer tags" supplied to EMA by the State of Michigan. Five of them were licensed in Minnesota under the name of DMV.↩
8. For purposes of determining who is entitled to a deduction for depreciation, separate entities or taxpayers generally will not be ignored. See . Thus, the taxpayer with the capital investment in the property is the person who is entitled to the depreciation deduction (assuming all other requirements are satisfied), even though that person is a corporation (like DMV) that is controlled by a different taxpayer (i.e., petitioner).↩
9. In fact, the record suggests that during the years at issue James Azzar was the owner of, or otherwise had a capital investment in, at least one of the automobiles at issue, and EMA was the owner of, or otherwise had a capital investment in, at least three of the automobiles at issue. Petitioner did not purchase, or maintain insurance on, any of those automobiles. James Azzar purchased at least one of them, and EMA purchased at least three of them. When the automobiles at issue were driven, they were driven under the authority of "dealer tags" supplied to EMA and were covered under an insurance policy maintained by EMA. In addition, during January 1994, EMA assigned to petitioner its right, title, and interest in the three automobiles at issue that EMA had purchased.↩
10. It is therefore unnecessary to address the other grounds on which respondent relies to support her disallowance of the depreciation deductions at issue.↩
11. In fact, the record suggests that petitioner's management instructed its accountant on how to classify the automobiles at issue. An entry in petitioner's journal for the year ended March 31, 1988, states that the entry is "to reclassify units placed in rental fleet per management." (Emphasis added.) Thus, it appears that petitioner may not have relied on its accountant to determine that it owned or otherwise had a capital investment in the 11 automobiles at issue. Furthermore, we have serious doubts as to the reliability of petitioner's records. Its journal for the year ended March 31, 1988, was not prepared until November or December 1988. Thus, petitioner's characterization in that journal of the automobiles at issue as part of a rental pool may not have occurred until after the close of the year ended March 31, 1988, for which it claimed a depreciation deduction with respect to those automobiles.↩
12. Petitioner does not argue that its understatement for either taxable year at issue was attributable in whole or in part to positions that were adequately disclosed in its returns for those years. Therefore, we will not address that question.↩